## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **VICTOR TINOCO III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1373-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

## I.    Background

Plaintiff applied for both SSD and SSI on May 27, 2009, alleging disability beginning February 29, 2009.  (R. 9, 118-27).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

Judge (ALJ).  (R. 9, 48-51, 70-71).  Plaintiff's request was granted, and Plaintiff appeared

with counsel for a hearing before ALJ Michael D. Shilling on January 19, 2011.  (R. 19-

47).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R.

9, 19-47).  On February 7, 2011, ALJ Shilling issued his decision, finding that although

Plaintiff is unable to perform any of his past relevant work, there are a significant number

of jobs in the economy that he can perform.  (R. 9-17).  Therefore, the ALJ concluded

that Plaintiff is not disabled within the meaning of the Act and denied Plaintiff's

applications.  (R. 18).  Plaintiff requested, but was denied Appeals Council review of the

ALJ's decision.  (R. 115, 319).[1]  Therefore, the ALJ's decision is the final decision of the

Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff

now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g));  Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same);  Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

---

[1]The Appeals Council stated that it had received "Representatives [sic] correspondence," made that correspondence a part of the administrative record, and considered it in denying Plaintiff's request for review.  (R. 1- 5).  The "Representatives correspondence" to which the Appeals Council refers, appears to be the last page of a representative's brief which is identified as "Exhibit No. 20E, Page: 1 of 1," and which potentially includes one or more apparently missing page(s).  (R. 319).  Plaintiff does not allege error in this ambiguity, and the court does not consider whether the apparently missing page(s) constitute(s) error on the part of the Commissioner.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting

3

identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and

1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only

unable to perform his past relevant work, but cannot, considering his age, education, and

work experience, engage in any other substantial gainful work existing in the national

economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used

at both step four and step five of the sequential evaluation process.  Id.

---

[2]The Commissioner's decision in this case was issued on February 7, 2011, and all
citation to the Code of Federal Regulations in this opinion refers to the 2010 edition of 20
C.F.R. Parts 400 to 499, Revised as of April 1, 2010, unless otherwise noted.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ did not properly assess an RFC in accordance with the dictates of Social Security Ruling (SSR) 96-8p, that he did not properly weigh the "other medical source" opinion of nurse-practitioner Harsch, and that he failed to conduct a proper credibility analysis.  The Commissioner argues that the ALJ properly found that Plaintiff's allegations of symptoms are not credible, that he properly considered the opinion evidence, and that he properly assessed an RFC from the record as a whole.

The court finds no error in the ALJ's decision.  Because evaluating the credibility of a claimant's allegations of symptoms and weighing medical source opinions are part of a proper RFC assessment, the court will consider Plaintiff's specific arguments regarding credibility and regarding the ALJ's weighing of the "other medical source" opinion before considering his more general arguments regarding the ALJ's RFC assessment.

## III.    Credibility

Plaintiff claims the ALJ erred in his credibility determination, specifically arguing that the "credibility analysis was short and vague" (Pl. Br. 24), and "was short on concrete reasons Mr. Tinoco's testimony should be disregard[ed]." Id. at 26. He argued that the daily activities relied upon by the ALJ are "not necessarily inconsistent with disabling medical impairments" and that the ALJ failed to consider all of the medical evidence in evaluating credibility, erroneously reporting that the medical records show Plaintiff's pain was controlled by medication. Id. at 24. The Commissioner argues that the ALJ performed a proper credibility analysis. (Comm'r Br. 5). He points to the reasons given by the ALJ to discount the credibility of Plaintiff's allegations, and explains how the record evidence supports those reasons. Id. at 6-13. In his reply brief, Plaintiff argues that the ALJ's statement "that the medical records did not indicate [Plaintiff's] back problems were severe enough to be disabling is conclusory and makes . . . a credibility analysis pointless," and that the "ALJ is essentially playing doctor" when he discounts the credibility of Plaintiff's allegations merely because Plaintiff had not received a back injection in more than two years. (Reply 9).

### A.   Credibility Standard

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the

ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).  Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

**B.      The ALJ's Credibility Determination**

7

In assessing RFC, the ALJ summarized Plaintiff's allegations of symptoms in the second full paragraph on page 6 of the decision.  (R. 14).  Thereafter, he summarized the medical evidence and the opinion evidence.  Id. at 14-16.  In the last four paragraphs of the RFC assessment, he explained the weight accorded to the opinion evidence, and he explained his credibility finding.  Id. at 16.  The ALJ found that Plaintiff's allegations are "less than credible," and provided at least eight reasons for that finding.  Id.  Regarding Plaintiff's back problems, the ALJ found that medical records do not indicate problems that are severe enough to be disabling; that Plaintiff's activities of housework, mowing the lawn, and driving do not suggest disability; that surgery was not recommended; that functional assessments indicated the ability to do sedentary work; that Plaintiff did not return to physical therapy; and that his condition responded to pain medication.  He also considered other impairments and found that despite limitations in intellectual functioning Plaintiff was able to learn mechanic work, and that Plaintiff continued to smoke a pack of cigarettes a day and did not indicate that his asthma caused limitations in functioning.  Id.

### C.    Analysis

The court finds that the ALJ's credibility determination was neither short and vague, nor short on concrete reasoning.  The ALJ stated the reasons for his credibility determination, and those reasons are affirmatively linked to record evidence as summarized in his decision.  Plaintiff's argument that certain evidence is not necessarily inconsistent with disability, and his appeal to certain portions of his testimony or to his allegations is merely a suggestion that the court should reweigh the evidence and make

8

the credibility determination itself.  As discussed above, the court may not do so, but must

determine whether substantial record evidence supports the ALJ's determination.

Plaintiff argues that the ALJ's first reason (that the medical records do not indicate

back problems that are severe enough to be disabling) is a conclusory assertion which

makes a credibility analysis pointless.  The court does not agree.  To be sure, that reason

expresses the ALJ's conclusion that the medical records do not support the severity of

back problems alleged, but that is an appropriate consideration in evaluating credibility.

Moreover, the ALJ's summary of the evidence reflects his consideration of the issue and

the record evidence supports his finding.  For example, the ALJ noted the MRI on

January 5, 2009 which showed only "slight canal narrowing," a small herniated disc

and/or extruded fragments, and "less narrowing elsewhere."  (R. 14) (citing Ex. 1F (R.

320-22)).  The ALJ's discussion contains almost verbatim quotations of the record cited.

The ALJ also summarized Dr. Chawla's treatment records which show conservative

treatment for Plaintiff's back symptoms--providing only meloxicam, a nonsteroidal anti-

inflammatory drug (NSAID), and flexeril, a muscle relaxant.  (R. 14) (citing Ex. 5F (R.

436-45)).  Finally, the ALJ summarized Dr. Sankoorikal's evaluation in July, 2009

wherein Dr. Sankoorikal noted that medications seem to help Plaintiff and that his

treatment plan was for conservative management.  (R. 14) (citing Ex. 14F (R. 503-05)).

Plaintiff's argument that it was error for the ALJ to find that his back pain was

controlled by medication is likewise unavailing.  As the discussion above reveals, Dr.

Chawla treated Plaintiff's back pain with an NSAID and a muscle relaxer, and Dr.

9

Sankoorikal suggested conservative treatment and noted that medication helped Plaintiff's back pain. (R. 14-15) (citing Exs. 5F, 14F (R. 436-45, 503-05). Moreover, the ALJ noted that the treatment records from the Shawnee County Health Agency "indicated that the [back] condition was treated with medication." (R. 14) (citing Exs. 4F, 10F, 18F, 19F (R. 378-435, 477-92, 636-58)). Based on these findings, supported by the record, it was not error for the ALJ to discount Plaintiff's allegations, in part, because "his condition responded to pain medication." (R. 16).

Plaintiff asserts that he "reported severe back pain every visit with the Shawnee County Health Agency," cites treatment notes from eleven visits in support of that statement, and argues that the ALJ failed to consider all of this evidence. (Pl. Br. 24). To the contrary, the ALJ considered and summarized Plaintiff's treatment with the Agency: "The claimant goes to Shawnee County Health Agency for his health condition (Exhibits 4F/10F/18F/19F [(R. 378-435, 477-92, 636-58)]). The claimant does indicate ongoing issues with his back. Treatment records in filed [sic] indicated that the condition was treated with medication." (R. 14). That summary is supported by the evidence cited. As the ALJ acknowledged, treatment notes indicate ongoing issues with Plaintiff's back. However, none of the treatment notes characterizes the back pain as "severe," although Plaintiff states he reported "severe" pain each visit. Several of the treatment notes, on the other hand, characterize the back pain as "chronic." (R. 641, 643, 645, 646, 648-49, 653). Moreover, each treatment note from that Agency records Plaintiff's "Chief Complaint," and in only two out of the eleven treatment notes cited by Plaintiff, and covering a period

of more than five years, was back pain included in the "Chief Complaint."  On August 7, 2008 the "Chief Complaint" related, "f/u [(followup)] LBP [(low back pain)]," (R. 393), and on December 12, 2010 the "Chief Complaint" related, "Pt having bad back pain & states he got his med stolen & Ⓑ eyes have been swollen and filling up wit with [sic] fluid would like them checked."  (R. 642).  These notes indicate that Plaintiff was following up with the Health Agency for his low back pain, and that when Plaintiff was without his pain medication he had "bad back pain."  However, as the ALJ found, and the record evidence supports, when Plaintiff used medication, his condition responded to the medication.  Finally, the ALJ cited exhibit 10F as one of the treatment records which he considered from Shawnee County Health Agency, but Plaintiff failed to cite from that exhibit in his brief.  Notably, a treatment note in that exhibit, from August 14, 2009, says nothing about back pain despite Plaintiff's argument that he complained of severe back pain on every visit.  Compare (R. 488-89) (no mention of back pain) with (Pl. Br. 24) ("He reported severe back pain every visit with the Shawnee County Health Agency."). While the notes from Shawnee County Health Agency do provide some support for the credibility of Plaintiff's allegations of pain, in context Plaintiff has shown no error in the ALJ's consideration of those notes, and he has certainly not demonstrated that those notes require finding that his allegations are credible.

Finally, Plaintiff's argument that the ALJ discounted his allegations because he had not received a back injection in more than two years is without a substantial basis in fact.  As Plaintiff's argument suggests, the ALJ noted that Plaintiff "has not had a back

injection shot for pain in the last two years."  (R. 14).  However, that notation appears in

the ALJ's summary of Plaintiff's allegations, and is immediately followed by the ALJ's

notation that Plaintiff "indicated that none of the treatment he has tried has helped much."

Id. ("The claimant alleged . . .").  However, in explaining his rationale for finding

Plaintiff "less than credible," the ALJ did not rely upon Plaintiff's assertion that he had

not had a back injection for pain in the last two years.  The decision simply contains no

indication that the ALJ discounted Plaintiff's allegation because he had not had a back

injection recently.  Since there is no indication the ALJ made such a finding, Plaintiff's

argument that the ALJ was "essentially playing doctor" when he made that finding also

fails.  Plaintiff has shown no error in the ALJ's credibility determination.

## IV.    The "Other" Medical Source Opinion of Ms. Harsch

Plaintiff claims the ALJ erred in failing to give significant weight to the Medical

Source Statement - Physical (medical source statement, or MSS) of Ms. Harsch, the

nurse-practitioner who treated him at Shawnee County Health Agency.  He claims the

ALJ ignored the opinion of Ms. Harsch, mistakenly referred to Ms. Harsch as a mental

health center nurse, and "did not even mention [SSR 06-3p] in discussing Ms. Harsch's

opinion."  (Pl. Br. 21).  In an apparent attempt to support Ms. Harsch's opinion, Plaintiff

points to Dr. Lienwetter's opinion that Plaintiff would not be able to return to his previous

type of employment.  Id. at 22.  The Commissioner argues that the ALJ did not ignore

Ms. Harsch's opinion but properly considered it.  He argues that the ALJ discussed the

opinion and gave it little weight because Ms. Harsch is not an "acceptable medical

12

source" within the meaning of the regulations, because her opinion is not supported by the medical records, and because the opinion is not supported by Plaintiff's testimony. (Comm'r Br. 16-18).  He argues that Dr. Lienwetter's opinion does not support Ms. Harsch's opinion because the ALJ agreed with Dr. Lienwetter that Plaintiff cannot perform his past work, and unlike Ms. Harsch, Dr. Lienwetter did not opine that Plaintiff cannot perform any work.  Id. at 17.  The Commissioner points to record evidence which in his view supports the ALJ's rationale, and concludes his argument by noting that Ms. Harsch's "Medical Source Statement" form is not a medical source statement within the meaning of SSR 96-5p, and that although Plaintiff argues that Ms. Harsch's opinion is not on an issue reserved to the Commissioner, the ALJ did not discount the opinion on that basis.  Id. at 18-21.  In his Reply, Plaintiff summarized Ms. Harsch's limitations and noted that, if accepted, they would preclude competitive employment.  (Reply 6-7).

### A.   Standard for Evaluating an "Other" Medical Source Opinion

The Commissioner has promulgated a procedure for weighing the opinions of "acceptable medical sources"[3] such as physicians and psychologists, and has designated such opinions as "medical opinions."  20 C.F.R. §§ 404.1527, 416.927.  A treating source

---

[3]The regulations define three types of "acceptable medical sources:"
"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

physician is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight" even if not accorded controlling weight.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

In accordance with the regulations, "acceptable medical source" identifies only a named class of professionals.  20 C.F.R. §§ 404.1513, 416.913.  Nurse-practitioners are among another group of health-care providers called "other" medical sources, from whom the Commissioner will accept and use evidence showing the severity of a plaintiff's impairment(s) and how the impairment(s) affects claimant's ability to work.  Id. §§ 404.1513(d), 416.913(d).  "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s),

and [claimant's] physical or mental restrictions."  Id. §§ 404.1527(a)(2), 416.927(a)(2).

A "treating source" must be an "acceptable medical source,"  Id. §§ 404.1502, 416.902,

and a medical opinion from a "treating source" may be given controlling weight in certain

circumstances.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Applying these regulations, a nurse practitioner is an "other" medical source, and

not an "acceptable medical source" or a "treating source."  A nurse practitioner's opinion

is not, strictly speaking, a "medical opinion," and is never entitled to controlling weight.

Recognizing the reality that an increasing number of claimants have their medical

care provided by health care providers who are not "acceptable medical sources"--nurse-

practitioners, physician's assistants, social workers, and therapists, the Commissioner

promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp.

2012).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis
> on containing medical costs, medical sources who are not "acceptable
> medical sources," such as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly assumed a greater
> percentage of the treatment and evaluation functions previously handled
> primarily by physicians and psychologists.  Opinions from these medical
> sources, who are not technically deemed "acceptable medical sources"
> under our rules, are important and should be evaluated on key issues such as
> impairment severity and functional effects, along with the other relevant
> evidence in the file.

Id., Rulings, 330-31 (emphasis added).

SSR 06-3p explains that if a treating source opinion is not given controlling

weight, opinions of nurse-practitioners will be evaluated using the same regulatory factors

used for evaluating medical opinions.  Id. at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927).  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

    In SSR 06-3p, the Commissioner recognizes that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."  West's Soc. Sec. Reporting Serv., Rulings at 332.  The ruling recognizes that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  Id. at 333; see also, Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007) (remanding to consider a nurse-practitioner's opinion in light of SSR 06-3p).

## B.    The ALJ's Evaluation of the Opinion Evidence

In addition to the medical records from Dr. Chawla, Dr. Sankoorikal, and the Shawnee County Health Agency discussed above, the ALJ considered and summarized a consultative mental examination performed by Dr. Kovach for the state agency, and the reports and opinion of the state agency physician, Dr. Parsons, and the state agency psychologist, Dr. Adams.  (R. 15-16).  He also considered and summarized Ms. Harsch's "Medical Source Statement - Physical:"

> A functional assessment was completed by Tracy Harsch ARNP with Shawnee County Mental Health on December 17, 2010.  She noted that the claimant could occasionally lift 10 pounds, frequently lift 5 pounds, could stand or walk 2 of 8 hours in a workday, and sit less than an hour in an 8 hour workday.  In addition, she indicated the claimant could never climb, kneel, or crouch and could only occasionally balance, stoop or crawl.  The claimant should avoid moderate exposure to cold, heat, weather, humidity, dust fumes and vibration (Exhibit 18F [(R. 636-38)]).

(R. 16).

The ALJ accorded "significant weight" to the opinion of Dr. Adams, and "substantial weight" to the opinion of Dr. Parsons except that Dr. Parsons's opinion "is reduced for the claimant's subjective complaints and additional medical information." (R. 16).  Finally, the ALJ explained the weight he accorded to Ms. Harsch's opinion:

> The opinion of the Mental Health Center nurse is considered, but given little weight.  This is an unacceptable medical source.  However, the opinion has been considered.  A review of the entire medical records and opinions reveal that the opinion is not supported by the medical records or even the claimant's testimony.

Id.

## C.    Analysis

17

As a preliminary matter, the court finds no reversible error in the ALJ's reference to Ms. Harsch as being "with Shawnee County Mental Health," or as the "Mental Health Center nurse." (R. 16). As Plaintiff argues, these are inaccurate references, but Plaintiff has shown no prejudice from that identification. The ALJ correctly summarized Ms. Harsch's opinion regarding physical rather than mental limitations. Moreover, he did not even suggest that the opinion was discounted because Ms. Marsch was a mental healthcare provider who opined with regard to physical limitations. The mistaken identification is the only indication that the ALJ believed Ms. Harsch was a mental healthcare provider rather than a physical healthcare provider, and there is simply no indication the ALJ believed that Ms. Harsch was not qualified to opine regarding physical limitations. Most importantly, the ALJ provided the correct citation to Ms. Harsch's opinion (Ex. 18F), and when summarizing and considering the Shawnee County Health Agency's records he correctly cited to all of the Agency's records, and included Ms. Harsch's opinion in his citation. (R. 14) (citing Exs. 4F, 10F, 18F, and 19F). The decision makes clear that despite his incorrect identification of her as the "Mental Health Center nurse," the ALJ understood Ms. Harsch was with the Shawnee County Health Agency and was qualified to, and did, opine regarding Plaintiff's physical limitations.

Although Ms. Harsch provided her opinion on the form of a "Medical Source Statement - Physical," it is clear that her opinion is technically not a "medical source statement" within the meaning of the regulations and of SSR 96-5p, because only an "acceptable medical source" can provide a medical source statement, and Ms. Harsch is

18

not an "acceptable medical source."  SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 125 (Supp. 2012) ("Medical source statements are medical opinions submitted by acceptable medical sources").  Moreover, the decision indicates that the ALJ applied the regulatory factors for weighing medical source opinions in evaluating Ms. Harsch's opinion (R. 13), and contrary to Plaintiff's implied argument, the ALJ did not discount Ms. Harsch's opinion because it concerned an issue reserved to the Commissioner.

And, as the Commissioner argues, Dr. Lienwetter's opinion provides no support for Ms. Harsch's opinion.  The ALJ agreed with Dr. Lienwetter that Plaintiff cannot perform his past work (R. 323) ("he is presently unable to return to his previous type of employment"), but Dr. Lienwetter did not opine that Plaintiff cannot perform any work--although Ms. Harsch did.

Plaintiff is correct in asserting that the ALJ "did not even mention Social Security Ruling 06-03p in discussing Ms. Harsch's opinion."  (Pl. Br. 21).  However, he ignores that the ALJ elsewhere stated that he had "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  (R. 13) (emphasis added).  Plaintiff does not point to evidence demonstrating that the ALJ did not apply SSR 06-3p.  Moreover, the ALJ's reasons for discounting the opinion suggest that he applied SSR 06-3p in his evaluation.

Finally, the ALJ provided three reasons for giving "little weight" to Ms. Harsch's opinion--Ms. Harsch is not an acceptable medical source whereas Dr. Parsons, to whose opinion regarding physical limitations the ALJ accorded "substantial weight," is an

acceptable medical source; Ms. Harsch's opinion is not supported by the medical records; and her opinion is not supported by Plaintiff's testimony.  Therefore, it is clear that the ALJ did not ignore Ms. Harsch's opinion, but he weighed it based upon the record evidence and in relation to the other opinion evidence in the record as required by SSR 06-3p.  Plaintiff has shown no error in the ALJ's evaluation of Ms. Harsch's opinion.

## V.      RFC Evaluation Pursuant to SSR 96-8p

Plaintiff's final claim is that the ALJ erred in failing to provide an adequate assessment of Plaintiff's RFC in accordance with SSR 96-8p.  He argues that the ALJ "did not have a narrative discussion of how the evidence supports each [RFC] conclusion, and cite specific medical evidence," (Pl. Br. 16), that the ALJ inadequately considered Plaintiff's carpal tunnel syndrome, id. 16-17, and that the "medical records as a whole would support a less than sedentary RFC," id. at 17-20.  The Commissioner argues that the ALJ properly assessed Plaintiff's RFC.  He argues that "an ALJ is not required to provide a pinpoint citation to medical evidence for each RFC finding," (Comm'r Br. 22), and that the ALJ properly found no limitations resulting from carpal tunnel syndrome, id. 22-24.  In his reply brief, Plaintiff reiterates his arguments and points to record evidence which in his opinion "would support a less than sedentary RFC."  (Reply 5-7).

### A.      Standard for Assessing RFC

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2.  It is an administrative assessment of how plaintiff's impairments and

20

related symptoms affect his ability to perform work related activities.  Id.; see also SSR

96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2012)  ("The term 'residual

functional capacity assessment' describes an adjudicator's findings about the ability of an

individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting

Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an

individual's medically determinable impairment(s) . . . may cause physical or mental

limitations or restrictions that may affect his or her capacity to do work-related physical

and mental activities.").  The Commissioner has provided eleven examples of the types of

evidence to be considered in making an RFC assessment, including:  medical history,

medical signs and laboratory findings, effects of treatment, reports of daily activities, lay

evidence, recorded observations, medical source statements, effects of symptoms,

attempts to work, need for a structured living environment, and work evaluations.  SSR

96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2012).

   Although an ALJ is not an acceptable medical source qualified to render a medical

opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from

the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the

ALJ's RFC assessment is an administrative, rather than a medical determination."

McDonald v. Astrue, No. 11-1263, slip op. at 21, 2012 WL 2989935 (10th Cir. July 23,

2012) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment

is made based on "all of the evidence in the record, not only the medical evidence, [it is]

well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at

21

**2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2012).  The ruling includes narrative discussion requirements for the RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion.  Id. at 150.

### B.  Analysis

The ALJ related his RFC assessment on pages five through eight of his decision. (R. 13-16).  The court earlier outlined the structure and essence of that assessment.  The ALJ summarized Plaintiff's allegations and the medical evidence and opinion evidence.

Id. at 14-16.  He considered and summarized the medical records from Dr. Chawla, Dr. Sankoorikal, and the Shawnee County Health Agency, the consultative mental examination performed by Dr. Kovach, the reports and opinions of Dr. Parsons and Dr. Adams, and Ms. Harsch's "Medical Source Statement - Physical."  (R. 14-16).  In the last four paragraphs of his RFC assessment, he explained the weight accorded to the opinion evidence, and he explained his credibility finding.  Id. at 16.  The ALJ found that Plaintiff's allegations are "less than credible," and provided at least eight reasons for that finding.  Id.  Finally, the ALJ accorded "significant weight" to the opinion of Dr. Adams, and "substantial weight" to the opinion of Dr. Parsons except that Dr. Parsons's opinion "is reduced for the claimant's subjective complaints and additional medical information," and he accorded "little weight" to Ms. Harsch's opinion.  Id. at 16.

From this summary and the court's earlier discussion of the ALJ's credibility determination and his evaluation of the opinion evidence, it is clear that the ALJ met the narrative discussion requirement of SSR 96-8p as it relates to credibility and medical opinions.  Moreover, the decision reveals that the ALJ provided a discussion which cited specific medical facts and nonmedical evidence, described how the evidence supports each conclusion,  discussed how the plaintiff is able to perform sustained work activities, and described the maximum amount of each work activity the plaintiff can perform.  Nonetheless, Plaintiff argues that the ALJ "did not have a narrative discussion of how the evidence supports each [RFC] conclusion, and cite specific medical evidence."  (Pl. Br. 16).  The court is at a loss to know what Plaintiff believes is missing from the ALJ's

23

discussion.  Apparently, Plaintiff seeks citation to medical evidence for each RFC limitation assessed.

As the Commissioner argues, such is not the law.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.; see also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements either in the medical evidence or in the medical opinions in the record.

Plaintiff also shows no error in the ALJ's consideration of carpal tunnel syndrome.  In his step two analysis, the ALJ determined that Plaintiff has the medically determinable impairment of carpal tunnel syndrome, but that in this case it is not severe within the meaning of the Act:

> The claimant also has mild carpal tunnel.  There was a nerve conduction test that showed some carpal tunnel syndrome, but the condition is not mentioned anywhere else in the medical records.  The condition does not

cause limitations in the claimant's ability to do basic physical work. The
condition is non-severe.

(R. 12) (emphasis added).

Plaintiff asserts that the ALJ failed to mention Plaintiff's statement to the doctor
performing the nerve conduction test that he had numbness and tingling in his hands and
arms the last six years. (Pl. Br. 17) (citing R. 436). However, the test was administered
in June 2009, (R. 436), and the record shows that Plaintiff earned over $22,000 in 2007,
within the six years period. (R. 129). Since Plaintiff worked at the level of substantial
gainful activity while he was allegedly experiencing such numbness and tingling, he has
not shown that the numbness and tingling cause limitations in his ability to perform basic
work activities. Plaintiff also appeals to his hearing testimony that his hands go numb
and cramp up two to three times a week. However, as the court determined herein the
ALJ properly found Plaintiff's allegations are not credible, and he need not accept that
testimony. Pursuant to the findings of the ALJ which are supported by the record
evidence, Plaintiff has not shown limitations in his functioning as a result of carpal tunnel
syndrome which should have been included in the RFC assessment.

Finally, Plaintiff argues that "the medical records as a whole would support a less
than sedentary RFC." (Pl. Br. 17); (Reply 5). He then explains how, in his view, the
record evidence supports that finding. (Pl. Br. 17-20); (Reply 5-7). Plaintiff's argument
misses the point of judicial review of the Commissioner's decisions. It is irrelevant
whether the record evidence might also be interpreted to support a decision different than

that reached in the Commissioner's final decision.  As the court has already explained, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted).  Rather than explaining how the record evidence might support a finding favorable to Plaintiff, it is necessary for Plaintiff to explain why the record evidence will not support the findings of the Commissioner.  That he has not done.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Dated this 30th day of November 2012, at Kansas City, Kansas.

s:/   John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

26